UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSEPH ANTHONY MCDANIELS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:18-cv-00238-JPH-MJD |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendants. | ) ) |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Joseph McDaniels brought claims against the United States and individual employees of the Federal Bureau of Prisons ("BOP") alleging negligence and deliberate indifference to a serious medical condition. The negligence claim, brought against the United States under the Federal Tort Claims Act ("FTCA"), alleged that nobody responded to a duress alarm that he initiated from inside his cell while he was experiencing atrial fibrillation.  He contends that correctional officers either disabled the duress alarm or ignored it, and that their failure to respond delayed his access to medical care and prolonged his pain and suffering.  The deliberate indifference claim alleged that two BOP employees, Lt. Baker and Nurse Smith, knew that he had a serious heart condition yet refused to let him take his cardiac medications.  Defendants filed a motion for summary judgment, which the Court granted with respect to Lt. Baker and denied with respect to Nurse Smith and the United States.

The Court recruited counsel for Mr. McDaniels and conducted a trial in July 2023 during which evidence related to both the FTCA claim against the

United States and the deliberate indifference claim against Nurse Smith was presented.[1] The jury found for Nurse Smith on the deliberate indifference claim and the Court took the FTCA claim against the United States under advisement.

The Parties have submitted Proposed Findings of Fact and Conclusions of Law. Dkt. 158; dkt. 159. Having considered those filings, the evidence, and the arguments presented at trial, the Court now makes findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1) and holds that the United States is **not liable** on the FTCA claim.

## I. Findings of Fact

### A. FCC Terre Haute and the Special Housing Unit

FCC Terre Haute has three facilities: a satellite camp, a medium-security facility called Federal Correctional Institution Terre Haute ("FCI Terre Haute"), and a maximum-security facility called United States Penitentiary Terre Haute ("USP Terre Haute"). Dkt. 154 at 38. The Special Housing Unit ("SHU") is a solitary confinement unit within USP Terre Haute. *Id.*; dkt. 153 at 39-41.

In the SHU, correctional officers are required to make rounds every 30 minutes, during which they walk down each range and look into each cell to ensure that prisoners are safe. Dkt. 154 at 55. If a correctional officer sees a prisoner in medical distress, the correctional officer must contact medical services. *Id.* Members of the nursing staff also walk through the SHU routinely, making sick call rounds and distributing medication. *Id.* Case managers,

---

[1] The Court thanks Mark Sniderman for his thorough and conscientious representation of Mr. McDaniels.

counselors, unit managers, and other BOP officials also regularly make rounds in the SHU throughout the day. *Id.* at 59; Exhibit 222.

Each cell in the SHU has a duress alarm button, which the prisoner can push in an emergency. *Id.* at 48-49. When a prisoner pushes the duress alarm button in his cell, an alarm goes off, which notifies the SHU control room officer. *Id.* The SHU control room officer then notifies the range officer that an alarm was activated, and the range officer checks on the prisoner. *Id.* If the officers in the SHU do not respond to the alarm promptly, an alarm will sound in the facility's main control room, and the officers there will call the SHU control room and direct the officers there to check and advise on the alarm. *Id.* at 49. Once a duress alarm has been pushed in a cell, it cannot be turned off remotely by BOP staff—"someone would have to physically go to the cell and turn the key to reset that alarm." Dkt. 154 at 50.

**B.     Mr. McDaniels' transfer to FCC Terre Haute and later to the SHU**

In February or March 2017, Mr. McDaniels was transferred to the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute"). Dkt. 154 at 87-88. A BOP physician conducted an initial intake examination and noted that Mr. McDaniels had several preexisting conditions, including diabetes and atrial fibrillation. *Id.* at 88-90; Exhibit 240. Atrial fibrillation involves a disturbance in the heart's electrical system that causes the heart's minor chamber to wiggle— called fibrillation—instead of beating. Dkt. 154 at 12. A patient experiencing atrial fibrillation may feel fluttering in the chest, shortness of breath, chest pain, and a rapid heartbeat. *Id.* at 12-13.

3

When Mr. McDaniels was incarcerated at FCC Terre Haute, the medical staff managed his atrial fibrillation and diabetes with several medications. At FCC Terre Haute, prisoners may receive medications by going to the nurses' station (the "pill line") or by a nurse coming to the prisoners' cell. *Id.* at 76, 109. Prisoners may also have "self-carry medication," where they are given a supply of medication to keep in their cell. *Id.* at 74. Mr. McDaniels received some of his medications, including insulin injections, through the pill line, while his cardiac medications were self-carry. Dkt. 153 at 9-11.

On August 3, 2017, Mr. McDaniels was moved from his cell at FCI Terre Haute to a cell in the SHU. *Id.*; dkt. 153 at 39-41. Mr. McDaniels was not allowed to take his self-carry medication with him into the SHU and, for reasons that are unclear from the record, they were not delivered to his cell in the SHU. Dkt. 153 at 43, 77.[2] As a result, he went without his cardiac medications from August 3 to August 5, 2017. *Id.*

### C. Mr. McDaniels experienced atrial fibrillation on August 5

It's undisputed that on August 5, 2017, Mr. McDaniels experienced atrial fibrillation while in his cell in the SHU; was examined by Nurse Michele Smith at approximately 6:25 p.m.; and was sent to the emergency room at Union Hospital pursuant to orders of the on-call physician. Dkt. 154 at 95-96; Exhibit 227; Exhibit 230. Emergency room doctors stabilized his heart rate, *id.* at 19;

---

[2] Mr. McDaniels' claim about his medications proceeded under *Bivens*, while his FTCA claim against the United States is based on only his allegations regarding the duress alarm. *See* dkt. 85 at 12–18; dkt. 159.

Exhibit 230, and Mr. McDaniels was transported back to USP Terre Haute on August 7, 2017.  Dkt. 154 at 99.

At trial, Mr. McDaniels testified that when he experienced atrial fibrillation, he felt like he was "having a heart attack," with his heart "thumping uncontrollably to the point where [he felt like he] was not breathing right.  He also had "dizzy spells," "shortness of breath," and "very uncomfortable tightness in the chest."  Mr. McDaniels further explained "it just makes you feel like, you know, okay, you are out of here any minute now" and "it felt like an elephant was sitting on my chest or at some points it felt like my chest was going to just pop out because it was beating so hard and fast, and other times it felt like I was just going to pass out."  Dkt. 153 at 22.

### D. SHU staff interactions with Mr. McDaniels before he was examined by Nurse Smith and sent to the emergency room

On August 5, 2017, Nurse Kelly Keller worked in the SHU from 6:50 a.m. until 5:35 p.m.  Dkt. 154 at 108.  During that time, she administered insulin to Mr. McDaniels at approximately 7:35 a.m. and 5:26 p.m.  *Id.* at 93, 109-11.  At no point did Nurse Keller observe Mr. McDaniels vomit or to be in medical distress.  *Id.* at 111.

Rebekka Eisele, a BOP case manager, was on duty on August 5, 2017, and did rounds in the SHU from 3:35 p.m. to 3:45 p.m.  Dkt. 154 at 64-67. She did not observe Mr. McDaniels vomit or otherwise show any signs of medical distress.  *Id.* at 67. Lt. Cranford's testimony that in 2017, correctional officers made rounds in the SHU to check on inmates every 30 minutes, was uncontested.  Dkt. 154 at 53-56.

5

### E. The condition of the SHU's duress alarm system on August 5

The duress alarm system in the SHU, and the duress button in Mr. McDaniels' cell, was functioning and operable on August 5, 2017. *Id.* at 50-51; *see also* dkt. 159 at 8 Plaintiff's Proposed Findings of Fact and Conclusions of Law (conceding that "no evidence adduced at trial directly supports the notion that the duress button or system was disarmed or shut off"). Blake Lott, who was the Supervisor and Facilities Manager at FCC Terre Haute in 2017, testified regarding his review of records related to the duress alarm system in the SHU. Dkt. 154 at 46-47. Mr. Lott reviewed facility records to see if there were work orders or any other records reflecting work orders, repairs, or complaints that the duress alarm system wasn't working, and there were not. Dkt. 154 at 50-51. Mr. Lott's testimony in this regard was uncontested. The Court finds based on this evidence that the duress alarm system in the SHU was working properly on August 5, 2017.

### F. Mr. McDaniels' testimony

At trial, Mr. McDaniels testified that on August 5, 2017, he was in atrial fibrillation and experiencing pain "[f]rom the time that [he] remember[ed] being up that morning until [he] ended up in the infirmary." Dkt. 153 at 23. He further testified that before he was taken to the infirmary, he pressed the duress button in his cell numerous times, but nobody responded. Dkt. 123 at 21-23.

The Court does not credit Mr. McDaniels' testimony. Mr. McDaniels gave prior sworn statements that on August 5, 2017, he "had been denied [his] meds", including medication for diabetes. Dkt. 1 at 5 (verified complaint) dkt. 203 (notice

of tort claim). This testimony was proven false by the undisputed evidence at trial. Contemporaneously created medical records and witness testimony establish that on August 5, 2017, Mr. McDaniels was given multiple doses of insulin and venlafaxine. Dkt. 154 at 93-94.

Next, Mr. McDaniels' testimony that he was in atrial fibrillation from the time he woke up on August 5, 2017, until he was taken to the infirmary is not credible. The Court credits the consistent evidence that multiple BOP personnel who saw Mr. McDaniels throughout the day on August 5, 2017, did not observe him to be in medical distress. Mr. McDaniels described in vivid detail what happens when he is in atrial fibrillation, including experiencing extreme discomfort, difficulty breathing, and feeling like he was having a heart attack with enormous pressure on his chest. Dkt. 153 at 22. It is not credible that Mr. McDaniels would have experienced such dire and alarming symptoms yet did not seek medical assistance from the nurses, guards, and case manager whom he saw throughout the day. It is similarly not plausible that such severe symptoms would go completely unnoticed by BOP staff and trained medical personnel, who credibly testified that they did not see Mr. McDaniels in medical distress.

The Court also does not credit Mr. McDaniels' testimony that he pressed the duress button in his cell numerous times on August 5, 2017, dkt. 153 at 21-23. First, for the reasons explained above, Mr. McDaniels was not a credible witness. Second, his testimony about the duress alarm is directly at odds with other evidence regarding the duress alarm. The duress alarm was functioning

7

properly on August 5, 2017. Once activated within a cell, the duress alarm continues to make a loud sound until it is manually reset with a key from within that cell. Until that happens, the alarm continues to sound not only on the SHU range, but also triggers another alarm within other parts of the facility. It therefore is not credible that an alarm would be ignored while Mr. McDaniels experiences atrial fibrillation. Mr. McDaniels' testimony is the only evidence in the record that he pushed the duress alarm in his cell on August 5, 2017. Given the material inconsistencies in other aspects of his testimony and the implausibility of his testimony about having activated the duress alarm, there is no credible evidence that Mr. McDaniels pushed the duress alarm in his cell on August 5, 2017. The Court therefore finds that he did not do so.

## II. Conclusions of Law

### A. Legal Standard

Under the FTCA, a negligence claim against the United States is governed by "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The actions Mr. McDaniels complains of occurred in Indiana, so Indiana law applies. *Id.* To prove negligence under Indiana law, Mr. McDaniels must establish: (1) a duty owed to him by the defendant; (2) a breach of that duty by the defendant; and (3) that the breach proximately caused the plaintiff's damages. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).

The parties do not dispute that the BOP owed Mr. McDaniels a general duty of care during his incarceration at FCC Terre Haute under 18 U.S.C. § 4042.

This statute provides that the BOP shall "(2) provide suitable quarters and provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise"; and "(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2)(3). While Section 4042 describes a general duty of care for federal inmates, Indiana law governs whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries. *Molzof v. United States*, 502 U.S. 301, 305 (1992) ("[T]he extent of the United States' liability under the FTCA is generally determined by reference to state law.").

**B. Breach**

Mr. McDaniels alleges that members of the correctional staff in the SHU were negligent by failing to respond to his duress alarms while he was in atrial fibrillation on August 5, 2017. Dkt. 1 at 5. He argues that "[t]he turning off of the [duress] alarm, or the failure to respond to Plaintiff's use of the duress button, was a breach of the duty owed to Plaintiff by the BOP." Dkt. 159 at 9. The "critical factor" in assessing breach is how much notice the BOP had of risk to Mr. McDaniels, which includes the "condition of the inmate, the circumstances of the [prison], and the extent of routine precautions." *Saunders v. Cnty of Steuben*, 693 N.E.2d 16, 19 (Ind. 1998); *see Babcock v. United States*, No. 2:17-cv-33-JPH-MJD, 2021 WL 3673788 at *4 (S.D. Ind. Aug. 19, 2021).

Here, there is no credible evidence that BOP officials either deactivated the

9

duress alarm or failed to respond to the duress alarm on August 5, 2017. Dkt. 159 at 8 (Mr. McDaniels conceding that there is "no evidence adduced at trial [that] directly supports the notion that the duress button or system was disarmed or shut off."). As explained above, the Court credits the evidence that Mr. McDaniels was not in medical distress until after his last appointment with Nurse Keller at 5:26 p.m. And, as explained above, the Court has made factual findings based on the evidence at trial that the duress alarm system in the SHU was working properly but that Mr. McDaniels did not push the duress alarm while experiencing atrial fibrillation. Instead, when Mr. McDaniels experienced atrial fibrillation, he was examined by Nurse Smith and then sent to the emergency room.

These facts demonstrate that the United States did not breach its duty of care to Mr. McDaniels. *See Saunders*, 693 F.3d at 19. Instead, it provided a working alarm system that Mr. McDaniels did not use while experiencing atrial fibrillation. The element of breach is therefore not satisfied on Mr. McDaniels' negligence claim, and the United States is not liable for any pain and suffering he experienced. *See Furry v. United States*, 712 F.3d 988, 994–95 (7th Cir. 2013); *Millbrook v. United States*, 564 Fed. App'x 855, 857–58 (7th Cir. 2014).

### IV. Conclusion

The United States is **NOT LIABLE** on Mr. McDaniels negligence claim arising from any pain and suffering Mr. McDaniels experienced at USP Terre Haute on August 5, 2017. Judgment consistent with this conclusion, the Court's

Screening Order, dkt. 8, the Court's Summary Judgment Order, dkt. 85, and the Jury Verdict, dkt. 149, shall now issue.

**SO ORDERED**.

Date: 3/12/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOSEPH ANTHONY MCDANIELS
2122 South 272nd Street
#B308
Kent, WA 98032

All electronically registered counsel